IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYLER TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE and NEW YORK STATE OFFICE OF INFORMATION TECHNOLOGY SERVICES <br><br> Defendants. | Civil Action No. 1:22-cv-877 (DNH/DJS) <br><br><br> **COMPLAINT** |

Plaintiff Tyler Technologies, Inc. files this Complaint against Defendants New York State Department of Taxation and Finance and the New York Office of Information Technology Services. In support of its claims herein, Tyler respectfully alleges the following:

### I. INTRODUCTION

1. This case involves a license and services agreement whereby the Plaintiff Tyler Technologies, Inc. ("Tyler") licensed certain software and provided services to Defendants New York State Department of Taxation and Finance (the "Department") and the New York Office of Information Technology Services ("OITS," and collectively with the Department, the "State"). Per the parties' agreement, Tyler provided over $15 million in software and services to the State to implement a system to assess and collect property taxes on a statewide basis. Abruptly and without any explanation, the State terminated the agreement "for convenience" in March 2022. Per the terms of the agreement, the State owes Tyler over $15 million for software licensed and other services rendered. Despite repeated requests for payment, the State has failed to even

respond to Tyler's various inquiries regarding the termination or to pay the outstanding amounts due.

## II. PARTIES

2. Tyler is a Delaware corporation that maintains a principal place of business at 5101 Tennyson Parkway, Plano, Texas 75024. Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler offers four solution groups, including Public Administration, Courts and Public Safety, K-12 Education, and Transformative Technology. Within Tyler's Public Administration solutions, Tyler provides solutions for the core functions of government: appraisal, tax collections, records, community development, utility billing, asset maintenance, finance, and administration. Tyler's appraisal and tax software solutions are in active use in hundreds of jurisdictions across the country and help manage more than 97 million parcels of property and produce more than 20 million assessment notices each year.

3. Defendant the State is a political subdivision of the State of New York. The Department is located at Building 9, W.A. Harriman State Office Campus, Albany, New York 12227. The Department can be served by serving Michael Shollar, Executive Deputy Commissioner, at Building 9, W.A. Harriman State Office Campus, Albany, New York 12227. OITS is located at Empire State Plaza, Swan Street Building, Core 4, 1st Floor, Albany, New York, 12223. OITS can be served with process by serving Jennifer Lorenz, Deputy Chief Information Officer at Empire State Plaza, Swan Street Building, Core 4, 1st Floor, Albany, New York, 12223.

**COMPLAINT** – Page 2

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Tyler and the State are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). The State is located in this District and a substantial part of the events or omissions giving rise to Tyler's claims occurred in this District. Furthermore, the parties, by agreement, consented to the courts located within the State of New York.

### IV. FACTUAL BACKGROUND

6. On February 28, 2017, Tyler and the State entered into a Contract and License CM02002 (the "Agreement"), whereby Tyler contracted to provide certain services to the State in order to implement an Enterprise Level, Multi-tenancy capable, Web-based real property tax software system referred to as RPSv5 (the "System"). The System is designed to allow the State to assess real property for the purpose of determining taxable value and to collect the required taxes.

7. The initial contract term was five years, with options for two additional extensions of the term for periods of five years each for purposes of annual maintenance. The Agreement provided that the State could terminate the Agreement "for convenience" "without reason at any time for convenience upon 30 days' written notice to the Contractor, without penalty or other early termination charges due." The Agreement further provided that:

> In the event of termination for convenience, the State will pay [Tyler] for all undisputed fees and expenses related to the Products, Deliverables, and/or Services the State has received and, as applicable, Accepted, prior to the effective date for termination. In addition, [Tyler] shall promptly submit an itemized invoice of all reasonable fees for Services rendered with regard to any

     partially completed Deliverables as of the effective date of termination.  In the event that the State and [Tyler] cannot agree on the fees to be paid to [Tyler] for such partially completed Deliverables, the parties shall engage in the dispute resolution process set for in Article XXI.D.

  8. Tyler began implementation of the System per the terms of the Agreement and substantial work was incurred on behalf of the State.  On February 15, 2022, Tyler received an order to stop work under the Agreement for a period of sixty days commencing on the date of the notice.  The stop work order provided no context to Tyler regarding the basis of the stop work order and Tyler was not aware at the time of any issue or reason why the State might wish to stop work on the almost-completed System.

  9. On February 28, 2022, Tyler responded to the stop work order by expressing surprise and requesting information and an update from the State regarding the basis for the stop work order and the State's desired next steps.  Tyler received no response to its February 28, 2022 letter and the State provided no additional context for the stop work order.

  10. On March 14, 2022, the State sent Tyler a Notice of Termination of the Agreement, citing Article XXII, Section C, the "Termination for Convenience" section of the Agreement.  The Notice provided no additional information regarding the basis for the termination.  The State did acknowledge that the parties had "agreed, in the event of termination, to cooperate in good faith to accomplish an orderly disengagement" and requested, as part of that disengagement, that Tyler destroy certain records related to the Agreement.

  11. On March 21, 2022, Tyler responded to the Notice of Termination, again expressing surprise and disappointment regarding the termination.  Tyler acknowledged that it would work in "good faith to facilitate the termination."  To that end, Tyler provided a draft

Termination agreement, acknowledged the request for destruction of State records, and provided contact information for the Transition Plan contemplated by the Agreement.

12. The draft Termination Agreement noted that, per the Termination for Convenience provision in the Agreement, the State was required to pay Tyler for "all undisputed fees and expenses related to the Products, Deliverables, and/or Services the State has received and, as applicable, Accepted, prior to the effective date for termination." Based on Tyler's calculations, that amount totals $15,611,631.25. Tyler included the itemized invoices for these amounts as required by the Agreement.

13. The State never responded to Tyler's March 21, 2022 letter or provided any comments to the draft Termination Agreement. Efforts by Tyler's in-house counsel and business leadership, to have some sort of dialogue or trigger some sort of response, through whatever State channels Tyler could identify, have been entirely unsuccessful. The State has simply gone "radio silent."

14. On July 5, 2022, Tyler reached out again to the State, noting that the State had not responded to any of Tyler's formal communications or outreach efforts. Tyler's July 5, 2022 correspondence indicated that Tyler viewed the State's lack of responsiveness as implied consent to the Termination Agreement as drafted and noted that Tyler expected to receive full payment not later than August 5, 2022.

15. The State never responded to Tyler's July 5, 2022 correspondence and did not make any payments per the Termination Agreement. Indeed, it has been over five months since the State terminated the Agreement without any explanation whatsoever and with no response to repeated outreach from Tyler regarding the significant outstanding amount owed and no payment of outstanding amounts due and payable.

16. Per the Termination for Convenience provisions of the Agreement, Tyler is entitled to be paid on outstanding invoices for work already performed. At this time, the outstanding amounts due Tyler are $15,611,631.25 for invoiced, unpaid fees.

## VI. CAUSES OF ACTION

### COUNT I. – BREACH OF CONTRACT

17. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

18. Tyler and the State entered into a valid, binding, and enforceable contract as described herein and as evidenced by the Agreement and other relevant ancillary documents.

19. Tyler performed its obligations under the contract, and at all relevant times Tyler has been willing and able to perform its obligations under the Agreement.

20. The State has materially breached the contract by failing to pay for services Tyler provided it under the Agreement as required in the "Fees and Payments" and "Termination for Convenience" provisions of the agreement and by failing to engage participate in the termination process in "good faith."

21. As a direct and proximate result of the State's material breaches of contract, Tyler has suffered damages and is entitled, among other things, to recover its damages in an amount to be determined at trial.

### COUNT II. – UNJUST ENRICHMENT

22. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

23. Tyler conferred a significant benefit on the State by providing over $15,611,631.25 of software and services deliverables to the State. The State was aware that it

was receiving the benefit and that the software and services had value.  The State was aware that Tyler expected to be paid for the software and services.  Under the circumstances, it would be unjust to allow the State to retain the benefit of those software and services deliverables without making payment to Tyler.

24. As a direct and proximate result of the State's conduct, Tyler has suffered damages and is entitled, among other things, to recover its damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Tyler requests that this Court grant it judgment against the State and award to Tyler:

(i). Tyler's actual damages in excess of the minimum jurisdictional limits of this Court;

(ii). pre-judgment interest as may be provided by law;

(iii). necessary and reasonable attorneys' fees and costs of court through trial and appeal of this action;

(iv). post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

(v). such other and further relief to which Tyler may be entitled.

Dated: August 23, 2022

    Respectfully submitted,

    **K&L GATES LLP**

    */s/ Tara L. Pehush*
    Tara L. Pehush
    NY Bar No. 518908
    599 Lexington Avenue
    New York, NY 10022-6030
    Telephone: 212.536.3900
    Facsimile: 212.536.3901
    Email: tara.pehush@klgates.com

    Beth W. Petronio (pro hac forthcoming)
    Texas Bar No. 00797664
    1717 Main Street
    Suite 2800
    Dallas, Texas 75201
    Telephone: 214.939.5500
    Facsimile: 214.939.5849
    Email: beth.petronio@klgates.com

    **ATTORNEYS FOR**
    **TYLER TECHNOLOGIES, INC.**